GARY M. RESTAINO
United States Attorney
District of Arizona
ABBIE BROUGHTON MARSH
California State Bar No. 226680
W. VINNIE LICHVAR
Arizona State Bar No. 028112
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Abbie.Broughton.Marsh@usdoj.gov
Email: Vinnie.Lichvar@usdoj.gov
Assistant United States Attorneys
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>Joseph Jason Ray,<br><br>　　　　　Defendant. | CR-23-00121-PHX-SMB (ESW)<br><br>**MEMORANDUM IN SUPPORT OF DETENTION** |

The United States of America, by and through undersigned counsel, hereby submits this Memorandum in support of detention in advance of the detention hearing currently set for February 21, 2023. The government's request for detention is supported by the memorandum below and all other matters of record, which are hereby incorporated by reference.

**MEMORANDUM OF LAW**

**I.   BRIEF FACTS AND SUMMARY OF ARGUMENT**

On February 7, 2023, a federal grand jury returned an indictment charging Defendant with three felonies: (1) Violence Against Railroad Carriers—Track Equipment, (2) Malicious Damage to a Vehicle by use of Fire or Explosives, and (3) Violence Against

Railroad Carriers—Dangerous Weapon. (Doc. 3) Defendant's violent and dangerous acts were aimed at the Union Pacific Railroad ("UPR") equipment and various individuals within its employ. With respect to Defendant's conduct in this case, he has demonstrated a long history of escalating violent behavior against UPR.

Defendant resides near a part of the railroad track in which trains switch track, causing loud noises. As a result of this noise, Defendant has grown increasingly frustrated, and unfortunately, has directed his anger at UPR and its employees on many occasions.

Defendant's initial conduct with UPR and its employees included verbal harassment and non-violent confrontation. It became so frequent, in fact, that UPR employees became familiar with Defendant. Thereafter, Defendant's actions became increasingly aggressive. He began throwing rocks at employees and oncoming trains. At times, the rock throwing caused trains to stop and a UPR employee reported to law enforcement that it was happening daily.

Most recently, and related to the charges in this case, Defendant threw a Molotov cocktail at a moving train engine that exploded into a ball of fire while train employees were aboard. In addition, Defendant shot a UPR train employee standing approximately sixty meters away with BBs from a BB gun. The BBs struck the employee causing pain and at least one red welt through five layers of clothing—two shirts, two sweatshirts, and a vest.

When law enforcement attempted to detain Defendant and search his home, Defendant refused to comply with numerous commands. Pinal County Regional SWAT team had to shoot chemical irritants into Defendant's home in order to get him to comply. During a subsequent search of his home, law enforcement agents found a Daisy Red Ryder Model 1938B .177 air rifle with a listed velocity of 350 feet per second ("fps"). Agents also found BBs and accelerants, such as gasoline.

The above-described facts related to this case alone, indicate that Defendant is a danger to the community, and that he will not follow conditions of release. But, Defendant's violent conduct and disrespect for the law is not limited to the facts related to

this case. Indeed, Defendant has a long history of criminal conduct that includes violence, threats, and failure to abide by court conditions of release.

On October 5, 2006, according to police reports, Defendant flagged down a truck driving by his residence. Defendant accused the driver of the truck of throwing a piece of trash in his yard. The driver denied Defendant's accusation and drove away. When the driver proceeded past Defendant's house moments later, after picking up a friend, Defendant struck the rear cab of the truck twice with a baseball bat. Defendant then threw the baseball bat through the back window, which struck the front windshield and cracked it. The truck driver parked down the street and called 911. While waiting for the police, Defendant approached them and stood approximately 50 yards away while holding a folding knife with a three-to-four-inch blade. During a subsequent interview, Defendant admitted that he was upset about trash being thrown in his yard and that he threw the bat at the vehicle, smashing the back window.

In May of 2011, according to police reports, Defendant went into a Jack in the Box and threated kill an employee, stating: "tell that bitch she is dead and I will be back later." He also stated: "she will be dust by tonight." Defendant texted the individual he was seeking, stating: "I will come to your work every day until I find you." He also texted: "you will be sorry, I know where you work." Defendant returned to the Jack in the Box and was arrested. Following his arrest, law enforcement found a knife in his back pocket (four inches long), and a baseball bat in the back seat of his vehicle.

On February 4, 2015, Defendant went to a Walmart and became frustrated because he had problems with his insurance. According to police reports, when Defendant walked out of the Walmart, he yelled: "fuck." An individual standing outside the Walmart then told Defendant to watch his mouth. Defendant responded by pushing the individual, kicking him in the stomach, and tackling him to the ground.

On April 27, 2018, according to police reports, Defendant confronted two individuals walking in an alley near his home. Defendant began yelling at them, and then repeatedly struck one of the individual's bicycles with a baseball bat.

On August 8, 2018, according to police reports, an employee from Arizona Water Co. drove to a residence and shut the water off. While doing so, he found a wrench inside the meter box, and took it per company policy. As he was driving away, Defendant drove his vehicle in front of the employee's vehicle, forcing it to stop. Defendant proceeded to threaten to kill the employee who was driving the vehicle because his water had been shut off. In doing so, Defendant called the employee a nigger, and stated that he had "no right to take his shut off wrench, nigger." During a subsequent interview, Defendant stated that an employee had taken his tool, that he had confronted the employee, and that he told the employee that he was a "piece of shit" for taking his tool.

On May 7, 2020, according to police reports, an individual reported that Defendant yelled at him and threw a large rock at his vehicle. The rock struck the rear window frame of the vehicle, damaging the metal and scratching the paint on the door.

The United States is currently aware of the following convictions for Defendant:

- May 24, 1991 – Robbery (felony)
- June 29, 2000 – DUI (misdemeanor)
- May 2, 2001 – Aggravated Assault (misdemeanor)
- February 21, 2002 – Disorderly Conduct/Fighting (misdemeanor)
- February 26, 2007 – Aggravated Assault-Deadly Weapon (felony)
- June 7, 2011 – Threat/Intimidation (misdemeanor)
- April 2, 2015 – Disorderly Conduct/Fighting (misdemeanor)
- October 23, 2020 – Criminal Damage (felony)
- February 2, 2021 – Criminal Trespass (misdemeanor)

Defendant received probationary sentences for some of the convictions describe above. The United States is aware that Defendant's probation has been revoked on more than one occasion for violating the terms of his probation.

Defendant's aforementioned behavior and criminal conviction demonstrate that he is a significant danger to the public. It also demonstrates that there is no combination of

conditions that can assure the safety of the public or his appearance at future proceedings—making him a flight risk. For these reasons, he should be detained.

## II. LEGAL ANALYSIS

The government generally bears the burden of showing that Defendant is a danger to the community by clear and convincing evidence and a risk of flight by a preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406-07 (9th Cir. 1985). It is well settled that the United States may proceed by proffer or hearsay. *See United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) ("[T]he rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the detention hearing."); *United States v. Cabrera-Ortigoza*, 196 F.R.D. 571, 574 (S.D. Cal. 2000) ("The circuit courts that have interpreted 18 U.S.C. § 3142(f) have uniformly made it clear that the government may proceed by proffer at a detention hearing under the Bail Reform Act of 1984."). As a consequence, "there is no requirement of live testimony by the government at a detention hearing." *Cabrera-Ortigoza*, 196 F.R.D. at 574.

The Court considers the factors set forth in 18 U.S.C. § 3142(g) when making its determination. These four factors are: (1) the nature and circumstances of the offense, including whether the offense is a crime of violence or involves an explosive or destructive device; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

In this case, all four factors weigh against release.

### A. Nature and Circumstances of the Charged Offenses

Defendant is charged with three violent and dangerous offenses—Violence Against Railroad Carriers—Track Equipment, Malicious Damage to a Vehicle by use of Fire or Explosives, and Violence Against Railroad Carriers—Dangerous Weapon. With respect to the first two charges, Defendant threw a Molotov cocktail at a moving train engine that was carrying train employees. Video surveillance of this incident shows the Molotov cocktail striking the front of the train, resulting in a large fireball. As it relates to the third

charge, Defendant placed a train employee in serious danger by repeatedly shooting him with a .177-caliber, BB gun from approximately sixty meters away. The listed velocity of the BB gun is 350 fps. Medical literature regarding pellet velocities have established that velocities at 130 fps from a .177-caliber can penetrate an eyeball, 290 fps can penetrate skin, and above 330 fps can pass through skin into soft tissues. This conduct alone, establishes that Defendant has a propensity for violence such that he is a danger to the community.

Moreover, Defendant is facing a mandatory minimum sentence of five years. That would amount to the longest sentence Defendant has ever faced. This prospective sentence gives Defendant a strong incentive to flee the jurisdiction of the Court, regardless of any alleged ties to the community. *See United States v. Jones*, 2013 WL 1908293 (D.Nev. 2013), citing *United States v. Parodi*, CR–08–0083 PJH, 2008 WL 683421, at *2 (N.D.Cal. Mar. 7, 2008) (stating that the length of sentence is of "particular importance in assessing the risk of flight").

### B. Weight of The Evidence

The weight of the evidence is overwhelming. Defendant has a long history of harassing UPR employees. He also has a history of throwing rocks at trains and employees. On the date of alleged offenses in the first two charges, video surveillance establishes that an individual with Defendant's physical characteristics walked from Defendant's residence threw a rock at a train, and then returned to the residence. Later that same evening, video surveillance depicts what appears to be the same individual approach an oncoming train with an object in his hand. It then depicts the individual light the object on fire and throw it at the train. The video shows the object strike the train and explode into a ball of fire. Law enforcement agents have established that Defendant is the only individual that resides in the residence described above. Moreover, train employees who witnessed this incident stated that the individual matched a physical description as Defendant, which whom they were familiar with. Finally, following a search of Defendant's residence, agents found at least a canister of gasoline, and a similarly looking empty canister.

With respect to the third charge, the UPR employee who was struck by BBs was standing approximately 60 meters from Defendant's residence when he was struck. Shortly thereafter, an investigator noticed that a window at Defendant's residence was cracked open. Following a search of the residence, agents found a .177-caliber BB gun and BBs. Finally, Defendant's father stated that he had seen Defendant shooting objects with his BB gun the day prior.

Accordingly, this factor supports also supports detention.

### C. Defendant's History and Characteristics.

As set forth in the Pretrial Services Report, Defendant has an extensive history of law enforcement contacts, some of which involve assaultive behavior. These contacts include threats as well as violent and assaultive acts. They also appear somewhat randomly aimed at individuals with whom Defendant has little or no prior relationship. These offenses have involved weapons including a baseball bat and rocks. The conduct in these episodes has been unpredictable, further escalating concern for the safety of the community and making it more difficult to craft adequate terms of release. Defendant also has a conviction for trespassing, indicating a lack of willingness to comply with authority. Additionally, he has shown he will not comply with Court orders, as evidenced by his history of repeatedly violating conditions of release.

Thus, this factor supports detention.

### D. Danger Posed by Defendant's Release

Defendant poses a serious risk to the community given his history of assaultive and threatening behavior and has been documented carrying a knife. He has shown that court supervision is insufficient to deter him from continuing to engage in criminal acts or from harassing and threatening victims. He has a documented history of flagrantly failing to comply with Court orders. There are no conditions that can reasonably be expected to ensure the safety of the community.

This factor supports detention.

## III. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court detain the defendant pending trial as a flight risk and danger.

Respectfully submitted this 16th day of February, 2023.

GARY M. RESTAINO<br>
United States Attorney<br>
District of Arizona<br>
<br>
<i>s/Abbie Broughton Marsh</i><br>
ABBIE BROUGHTON MARSH<br>
W. VINNI LICHVAR<br>
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing. I hereby certify that on this same date, I served the attached document by electronic mail, on the following, who may or may not be registered participants of the CM/ECF System: Jazmin J. Alagha, Counsel for Defendant

<i>s/Theresa A. Hanson</i>
Theresa A. Hanson
US Attorney's Office